UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TARSHISH McDONALD,

Plaintiff,

v. CASE NO. 8:05-CV-141-T-MAP

DAVID GEE, Sheriff of
Hillsborough County, in
his official capacity, and
Deputy STU GRAY,
in his individual capacity,

Defendants.
_______________________________________/

**ORDER**

Plaintiff, arrested for a crime she claims she did not commit, brings this §1983 action against the deputy who obtained her arrest warrant and the sheriff for allegedly having a de facto policy targeting black citizens. She also levels state claims against the deputy for false arrest and malicious prosecution. The Defendants deny any constitutional violation occurred and move for summary judgment (doc. 23). After considering the summary judgment record, I find the deputy conducted a reasonable investigation and that arguable probable cause supported the Plaintiff's arrest. Accordingly, Defendants's motion for summary judgment as to Plaintiff's federal claims is granted.[1]

*A. Standard of Review*

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The

[1] The parties consented to my jurisdiction (doc. 10). *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id*.

*B. Facts*

The material facts are not in dispute. Michelle Anderson unexpectedly discovered credit problems while refinancing her home in early 2001. Someone named Tarshishee had attempted to set up an account acting as her daughter. On July 1, 2001, two black females using Anderson's personal identification information purchased almost $1,000 in jewelry at the Sears store in Brandon. In August, Anderson discovered an individual using the name Tasha had used her personal identification to secure a credit account at Spiegel's and to make several purchases. Additionally, an effort had been made to fraudulently open another account at MBNA with Anderson's identity data.

By September, Sears security had focused on a particular surveillance video of the July 1 jewelry purchase. When Anderson viewed, she immediately identified one of the black females as the Plaintiff, Tarshish McDonald, a former coworker at the Publix Supermarket in Brandon. Despite Anderson's quick conclusion, she played the video several more times; again, she identified McDonald as the perpetrator. (Anderson depo, p. 23). The next day, Anderson's husband, who two months earlier had reported his wife's identity theft to the Hillsborough County Sheriff's Office, informed authorities about his wife's encounter with Sears's security. About a week later, Defendant Stu Gray, a deputy with the Hillsborough County Sheriff's Office ("HCSO") interviewed Anderson.

She told Gray about the Sears incident and her identification of McDonald from the video.[2] Gray next visited Sears, viewed and obtained copies of the video and sales receipts, and then interviewed the Publix manager where Plaintiff had previously worked. The manager supplied Gray with McDonald's correctly spelled name, social security number, and date of birth. From this Gray obtained McDonald's driver's license photograph. When Gray showed Anderson the photograph, Anderson identified her former coworker as the one she had spotted in the video (Gray affidavit).

Based on this information, on September 21, 2001, Gray obtained a warrant for Plaintiff's arrest on uttering a forged instrument and third degree grand theft and entered it on the FCIC/NCIC system. On November 28, 2001, Volusia County deputies arrested the Plaintiff on the Bethune Cookman College campus. Although the Hillsborough County State Attorney eventually dismissed the charges, Anderson is convinced the woman she identified in the surveillance video is the Plaintiff.

Plaintiff contends Defendant Gray violated her Fourth and Fourteenth Amendment guarantees by making reckless and false statements or omissions in his affidavit for Plaintiff's arrest and by failing to reasonably investigate the matter (doc. 1 at para. 14-15). Further, she contends the Sheriff of Hillsborough County "had a de facto policy in practice for targeting black citizens principally on their perceived race or ethnicity, harassing them over non-existing violations and subjecting them to unlawful detention, searches, and arrests." *Id.* at para. 19. Plaintiff offers no material evidence to support her assertions and particularly fails to meet her summary judgment

[2] Anderson mistakenly told Gray that McDonald's first name was Tasha.

burden.[3]

*D. Discussion*

Obviously, an arrest without probable cause violates the Fourth Amendment. *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997). Probable cause exists when police have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information and sufficient in themselves to warrant a belief by a prudent person that an offense has been committed or is being committed by the person to be arrested. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Pickens v. Hollowell*, 59 F.3d 1203, 1205 (11th Cir. 1995). Because probable cause "does not deal with hard certainties, but with probabilities," law enforcement officers are entitled to formulate certain "common-sense conclusions about human behavior." *Illinois v. Gates*, 462 U.S. 213, 231-32 (1983).

When qualified immunity is at stake, like it is here, the court measures probable cause using a slightly different perspective. *See Von Stein v. Brescher*, 904 F.2d 572, 578-79 (11th Cir. 1990) ("intertwined with question of probable cause is the issue of qualified immunity"). For qualified immunity, the issue is not whether there was probable cause but whether there was *arguable* probable cause to arrest. *Crosby v. Monroe County*, 394 F.3d 1328, 1332-33 (11th Cir. 2004); *Madiwale*, at1324 (emphasis supplied). Arguable probable cause means: "if, under all of the facts

---

[3] In *Celotex*, the Supreme Court held that the party moving for summary judgment, and who does not bear the burden of proof at trial, need not negate the other side's case. *Celotex*, at 322-323. But once the moving party has satisfied its initial burden under the rule, it is up to the nonmoving party to show that a genuine issue of material fact remains and not just some "metaphysical doubt" as to these facts. *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex* at 324. The "nonmoving party is required to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Celotex* at 324; *Matsushita* at 587. Plaintiff particularly fails to offer any evidence supporting her claim that Sheriff Gee had a policy of targeting and harassing African-Americans for non-existing violations. Accordingly, no discussion as to this claim is required or warranted. This is particularly so given this Court's finding that arguable probable cause supported the Plaintiff's arrest.

and circumstances, an officer reasonably could – *not necessarily would* – have believed that probable cause was present." *Id* at 1332-33. Putting it differently, as long as there is arguable probable cause, qualified immunity applies *even if* actual probable cause did not exist.

A corollary to this is that an arresting officer is required to conduct a reasonable investigation to establish probable cause. *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir. 1998). For a qualified immunity analysis, the officer is charged with possessing all of the information reasonably discoverable by an officer acting reasonably under the circumstances. *Kingsland v. City of Miami,* 382 F.3d 1220, 1228 (11th Cir. 2004). Thus, he cannot conduct a biased investigation, or elect not to obtain easily discoverable facts, or ignore relevant information negating probable cause. *Id* at 1229. Nor does the Fourth Amendment permit an officer to present materially false and reckless statements in support of an arrest warrant. *See Franks v. Delaware,* 438 U.S. 154 (1978).[4] But this does not mean the officer must perform an error-free investigation, or take every conceivable step to eliminate all possible defenses, or ensure at whatever costs that he is not contributing to the possibility of convicting an innocent person. *Id*; *Rankin,* 133 F.3d at 1437.

The Supreme Court has repeatedly stressed qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz,* 533 U.S. at 200-201 quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) (emphasis in original). The doctrine offers complete protection

[4] Before a suppression hearing is even warranted under *Franks,* a criminal defendant must make a "substantial preliminary showing" the affiant made a "false statement knowingly and intentionally, or with reckless disregard for the truth." 438 U.S. at 155. And the defendant's claim must be specific. Conclusory allegations are insufficient. *Id*. at 171. *Franks* requires the defendant to point to the exact portions of the application he challenges, provide a statement of reasons for his contentions, and supply an offer of proof supporting his grounds or give some satisfactory explanation for not doing so. *Id.* Negligence or innocent mistakes do not violate the Fourth Amendment. *Id.*; *Madiwale, supra* at 117 F.3d 1326.

for government officials who are sued in their individual capacities where "their conduct violates no clearly established statutory or constitutional rights that a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Its purpose is to shield from suit "all but the plainly incompetent or one who is knowingly violating the federal law" thereby allowing government officials to carry out their discretionary duties without fear of personal liability or harassing litigation. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001).

To be eligible for qualified immunity, the official must establish that he was engaged in a discretionary function at the time of the alleged violation. If the official satisfies that demand, the plaintiff must then show the defendant committed a constitutional violation and that the constitutional right the defendant violated was "clearly established" at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Crosby*, 394 F.3d at 1332. The first part of the test is easy here. Making an arrest or detaining a suspect clearly falls within the official responsibilities of a sheriff's deputy and, therefore, within the ambit of discretionary functions. Hence, the core issue is whether Deputy Gray reasonably conducted an investigation to establish probable cause, arguably had probable cause to conclude Plaintiff committed the criminal acts in question, or intentionally or recklessly made false statements or omissions improperly impacting the probable cause decision.

Although the Plaintiff argues if the "true" facts had been known an arrest warrant would never have been approved, her real theme is Gray knew or reasonably should have known before her arrest that someone else was a better suspect than she (doc. 30, pp. 2-4). For example, a month before Plaintiff's arrest, Tampa police had arrested a black female (Eshamera Moss) for either attempting to purchase or purchasing items at a Burdines store using Anderson's identity. This store

had been the victim of another fraudulent purchase using Anderson's identity in early September. According to the Plaintiff, Moss roughly matched her physical height and weight. Moreover, contrary to the Plaintiff's physical characteristics, the clerk at the Burdines identified the individual using Anderson's identity as having several gold front teeth.

But Plaintiff's core assumption from these events – that someone else was a more reasonable suspect – misses an essential investigative conclusion by Gray. Based on the repeated uses of Anderson's identity information over time, he had decided from his experience in investigating these types of crimes that more than one person was likely involved (Gray depo at pp. 30). Hence, Moss's arrest, while noteworthy, did not alter his focus. Sufficient reliable evidence supported his reasonably objective belief that more than one person used Anderson's identity and that arguable probable cause specifically supported Plaintiff's arrest. This information included: Anderson's positive identification of Plaintiff, Anderson's familiarity with the Plaintiff, Gray's corroboration of her account, the presence of two black females during the fraudulent transaction charged in the warrant, and the similarity between the Plaintiff's name and the ones which surfaced in the fraudulent use of Anderson's identity data. *See Rankin*, 133 F.3d at 1441 (officer entitled to rely on victim's identification and statements as support for probable cause). Gray reasonably conducted his investigation, accurately reported his findings in his affidavit, and did not omit recklessly or intentionally any material facts that would have negated arguable probable cause.

*D. Conclusion*

For the reasons stated, it is hereby

ORDERED:

1. Defendants' motion for summary judgment (docs. 23) as to Counts One and Two are

**GRANTED**.

2. Plaintiff's state claims (Counts Three and Four) are dismissed without prejudice.[5]

3. The Clerk of Court is directed to close the case.

DONE AND ORDERED at Tampa, Florida May 31, 2006.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of Record

[5] Though federal courts have the power to hear state law claims which "derive from a common nucleus of operative fact" with a substantial federal claim, the power should not be exercised as a matter of course, especially where the federal claims are dismissed before trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).